AMERICAN MANUFACTURERS OF CASTOR OIL PRODUCTS, ("AMCOP"), PLAINTIFF *v.* UNITED STATES, DEFENDANT, SANBRA, S.A., INTERVENORS

No. 84-4-00570

Before RAO, *Judge.*

(Dated November 1, 1984)

RAO, *Judge:* This case involves castor oil products imported from Brazil and subject to a countervailing duty order. Plaintiff has moved for a preliminary injunction to enjoin the United States Customs Service from liquidating certain entries involved herein during the pendency of this action. A temporary restraining order dated June 21, 1984 was previously granted by this Court but plaintiff's application for a second temporary restraining order was denied by order of September 4, 1984.

Also before the Court is intervenor's, Sanbra, S.A. (Sanbra) motion to dismiss Count IV of plaintiff's complaint. The motion is grounded on Sanbra's position that the Court lacks subject matter jurisdiction of Count IV and also because it fails to state a cause of action for which relief can be granted.

We also address plaintiff's motion for leave to amend its complaint, which is opposed both by the defendant and by Sanbra.

We shall consider the motion to dismiss Count IV of the amended complaint first, as the decision to grant this motion is dispositive of the other issues which have been raised in this action by these pending motions.

Plaintiff seeks review of the determination by the Department of Commerce to direct the Customs Service to liquidate the entries in issue at the estimated rate. The facts underlying this determination are as follow:

Castor oil products from Brazil were subject to a countervailing duty order issued by the Treasury Department in 1976 (41 Fed. Reg. 11018). On January 2, 1980 responsibility for administering the countervailing duty laws of the United States was transferred from the Treasury Department to the Department of Commerce. Pursuant to the transitional provisions of the Trade Agreements Act of 1979, the Government of Brazil requested an injury investigation with respect to the castor oil products subject to the countervailing duty order. Acting under Section 104(b)(3) of the Trade Agreements Act of 1979, Commerce suspended liquidation of the entries of the affected merchandise from August 3, 1981 and began collecting "estimated countervailing duties pending the injury determination." The investigation was conducted by the International Trade Commission, (ITC), also pursuant to section 104 of the Trade Agreements Act of 1979.

This section provides as follows:

*SECTION 104*

(b) OTHER COUNTERVAILING DUTY ORDERS.—

(1) REVIEW BY COMMISSION UPON REQUEST.—

In the case of a countervailing duty order issued under section 303 of the Tariff Act of 1930 (19 U.S.C. 1303)—

(A) which is in effection January 1, 1980, or which is issued pursuant to court order in an action brought under section 516(d) of that Act before that date,

the Commission, upon the request of the government of such a country or of exporters accounting for a significant proportion of exports to the United States of merchandise which is covered by the order, submitted within 3 years after the effective date of title VII of the Tariff Act of 1983 shall make a determination under paragraph (2) of this subsection.

(2) DETERMINATION BY THE COMMISSION.—

In a case described in paragraph (1) with respect to which it has received a request for review, the Commission shall commence an investigation to determine whether—

(A) an industry in the United States—

(i) would be materially injured, or

(ii) would be threatened with material injury or,

(B) the establishment of an industry in the United States would be materially retarded, by reason of imports of the merchandise covered by the countervailing duty order if the order were to be revoked.

(3) SUSPENSION OF LIQUIDATION; INVESTIGATION TIME LIMITS.—

Whenever the Commission receives a request under paragraph (1), it shall promptly notify the administering authority and the administering authority shall suspend liquidation of entries of the affected merchandise made on or after the date of receipt of the Commission's notification, or in the case of butter from Australia, entries of merchandise subject to the assessment of countervailing duties under Treasury Decision 42937, as amended, and collect estimated countervailing duties pending the determination of the Commission. The Commission shall issue its determination in any investigation under this subsection not later than 3 years after the date of commencement of such investigation.

(4) EFFECT OF DETERMINATION.—

(A) AFFIRMATIVE DETERMINATION.—

Upon being notified of an affirmative determination under paragraph (2) by the Commission, the administering authority shall liquidate entries of merchandise the liquidation of which was suspended under paragraph (3) of this subsection and impose countervailing duties in the amount of the estimated duties required to be deposited. The countervailing duty order shall remain in effect until revoked, in whole or in part, under section 751(c) of the Tariff Act of 1930.

When the existing countervailing duty law was amended by the Trade Agreements Act of 1979, one of the significant changes was the addition of the requirement that the International Trade Commission make an affirmative finding of injury to a domestic industry before a countervailing duty order will issue. Prior to the Trade Agreements Act, countervailing duties were imposed by the Treasury Department when it found that imported merchandise was being subsidized. No injury determination was required under previous law.

When the amendments made by the Trade Agreements Act became effective, there were in existence numerous countervailing duty orders, including the one here in issue, which had been issued without the benefit of an injury determination.

With respect to these previously existing countervailing duty orders, section 104(c) of the Trade Agreements Act of 1979 provides that any countervailing duty order which is in effect after the effective date of the Act shall remain in effect and shall be subject to review under section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675. Section 104(b), however, provides that the government of a country which exports to the United States merchandise which is covered by an existing Countervailing duty order can request that the International Trade Commission conduct an investigation to determine whether a domestic industry would be materially injured or would be threatened with material injury because of imports of the merchandise covered by the order if the order were revoked.

Pursuant to the terms of section 104(c), the Commerce Department, when it took over responsibility for administering the countervailing duty law on January 2, 1980, began conducting annual § 751 reviews of the countervailing duty order covering castor oil products from Brazil. The first annual review was commenced to cover the calendar year 1979, a second review was commenced to cover the calendar year 1980 and a third was commenced to cover the year 1981.

On August 3, 1981, before Commerce's § 751 reviews were completed, the International Trade Commission notified the Department of Commerce that the government of Brazil had requested that it make an injury determination with respect to the existing countervailing duty order covering castor oil products from Brazil, pursuant to section 104(b). In conformity with section 104(b)(3), Commerce suspended liquidation of subsequent entries of castor oil products from Brazil pending this investigation and collected estimated countervailing duties at the prevailing deposit rate. During the ITC's investigation, Commerce continued its § 751 reviews, *supra.*

Commerce concluded its annual reviews for calendar years 1979 and 1980 before the ITC concluded its investigation. These reviews determined the net subsidy rates for calendar years 1979 and 1980,

and set the rates for the deposit of estimated duties on entries made during the ITC's injury investigation. Thus, entries made during the period of investigation were subjected to three different estimated duty deposit rates: 1% for entries made during the period August 3, 1981 through December 24, 1981; 2.53% for entries made during the period December 25, 1981 through September 7, 1983; and 0.82% for entries made after September 8, 1983. On January 27, 1984, the ITC announced its affirmative determination that an industry in the United States would be materially injured, or threatened with material injury, if the countervailing duty order covering castor oil products from Brazil was revoked.

On March 16, 1984, Commerce published the final results of its administrative review for calendar year 1981, and found the aggregate net subsidy to be 4.70 percent of the f.o.b. invoice prices. Subsequently, when Commerce published the results of its section 751 review for the calendar year 1981, it stated that it would instruct Customs, pursuant to section 104(b), to assess countervailing duties in the amount of the three previously determined estimated countervailing duty deposit rates on all unliquidated entries of castor oil products from Brazil entered on or after August 3, 1981 and on or before January 27, 1984, *i.e.,* the period of time during which the ITC's injury investigation was pending.

Plaintiff's original complaint was filed on May 8, 1984 and contained counts which contested Commerce's failure to verify certain information relied upon in the administrative review and Commerce's alleged refusal to investigate the use of certain programs that AMCOP claimed were countervailable.

Plaintiff later amended its complaint as of right pursuant to Rule 15(a) of the Rules of this Court, seeking a determination that the liquidation of entries made during the pendency of the ITC injury investigation at the estimated countervailing duty deposit rates was unlawful.

It is plaintiff's position that section 104(b)(4) controls section 104(b)(3) in that it requires that "the countervailing duty order shall remain in effect until revoked, in whole or in part, under section 751(c) of the Tariff Act of 1930" and that therefore the duty rates established by the orginal countervailing duty order should be those utilized in liquidating all the entries made during the existence of that countervailing duty order.

We reiterate our interpretation of section 104(b) stated in the temporary restraining order of June 21, 1984 that the statute is clear on its face and unambiguous. The statute requires only that the agency impose countervailing duties at the estimated deposit rate during the period of investigation. At all other times, the countervailing duty rate established by the particular countervailing duty order that is in existence is to be applied.

This court does not find these portions of section 104 to be in conflict. Nor does it find, as plaintiff contends, that section 104(b)(4) must supercede section 104(b)(3).

Although the statute is clear, the legislative history for section 104(b) confirms our interpretation:

> If the Commission's determination with respect to material injury under Section 104(b) is affirmative, the administering authority would liquidate entries of merchandise the liquidation of which has been suspended during the period of the Commission's investigation and impose countervailing duties in the amount of the estimated duties required to be deposited. [S. Rep. No. 249, 96th Cong., 1st Sess. 105–06.]

Even under a strained reading of the involved statutory provisions, this Court cannot arrive at the conclusion to which the plaintiff would have it arrive. Section 104(c) on which the plaintiff relies provides only that any countervailing duty order issued under section 303 of the Tariff Act of 1930 which is in effect on the effective date of the Trade Agreements Act shall remain in effect after that date and shall be subject to review under section 751 of the Tariff Act of 1930. By the very language of the section, it is made subject to the provisions of Subsection (a) and (b) of section 104.

It is therefore the decision of this Court that Intervenor's motion to dismiss Court IV of plaintiff's amended complaint should be granted, as there is no basis in fact or in law under which plaintiff could prevail in seeking liquidation of the instant entries at other than the estimated deposit rate during the pendency of the ITC's investigation.

The plaintiff's motion for a preliminary injunction enjoining the liquidation of these entries must also be denied, since one of the requisites for the issuance of a preliminary injunction is a likelihood that the plaintiff will prevail on the merits.

Similarly, plaintiff's motion for leave to amend it's complaint, to the extent that it seeks to invoke the court's jurisdiction in the matter of the liquidation at the estimated deposit rates is now moot.

So ordered.